# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PETER A. CALI,**

        **Plaintiff,**

**-vs-**                                                  **Case No. 6:09-cv-580-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for social security disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for an award of benefits.[1]

### *PROCEDURAL HISTORY*

By any reasonable standard, Plaintiff's odyssey through the Social Security disability claims process has been exceptionally arduous. Plaintiff filed an application for a period of disability and disability insurance benefits on June 7, 1997, alleging disability beginning March 30, 1996 (R. 26, 74-76). The application was denied initially and upon reconsideration. Plaintiff requested and received a hearing on his application, and the Administrative Law Judge ("the ALJ") issued an unfavorable decision on August 14, 1998 (R. 68-69, 193-202). Upon exhaustion of his administrative remedies, Plaintiff sought review of that decision in this Court. As the Commissioner was unable to locate the hearing transcript, the Court granted the Commissioner's request for a remand under

---

[1] In view of this finding, Plaintiff's request for oral argument is denied, as unnecessary.

sentence six of 42 U.S.C. § 405(g). *See Cali v. Commissioner of Social Security*, Case No. 6:02-CV-982-Orl-28DAB (M.D. Fla. Dec. 21, 2002) (R. 215-16).

Upon remand, Plaintiff appeared and testified again at a second hearing held in September 2003, before the same ALJ (R. 21-54). On November 14, 2003, the ALJ issued a decision determining that Plaintiff was not disabled (R. 4-14). The case returned to this Court (which retained jurisdiction pursuant to the sentence six remand) and the undersigned recommended that the matter be remanded to the Commissioner on the merits, as the administrative decision was not supported by substantial evidence and was not made in accordance with proper legal standards. *See Cali v. Comm'r of Soc. Sec.*, Case No. 6:02-cv-982-Orl-28DAB (M.D. Fla. Nov. 3, 2004). Specifically, this Court concluded that the ALJ's findings regarding Plaintiff's pain and limitations were not supported by substantial evidence and found, as the ALJ "improperly discredited Plaintiff's allegations of pain and limitations, it was error to rely exclusively on the grids in determining that Plaintiff could perform work in the economy" (R.249-250). On November 21, 2004, the presiding District Judge adopted the Recommendation, reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) (R. 28-86, 235-36, 250).

Upon the second remand, Plaintiff appeared and testified at his *third* hearing, held on September 15, 2005, before a different ALJ (R. 287-89; 315-78). In a hearing decision dated October 19, 2005, that ALJ found Plaintiff to be not disabled (R. 253-65). Plaintiff exhausted his administrative remedies with respect to that decision and filed a new complaint in this Court. *See Cali v. Commissioner of Social Security*, Case No. 6:06-CV-649-Orl-DAB (M.D. Fla. 2006). The parties consented to the jurisdiction of the undersigned magistrate judge and the Court reviewed the matter anew. Upon determining that the Commissioner's 2005 decision did not satisfy the appropriate standard of review, on August 6, 2007, this Court reversed that decision and remanded the case back to the Commissioner "to perform the appropriate testing of Plaintiff's literacy and to decide whether

other jobs exist in the national economy that Plaintiff can perform at his level of reading and writing, once the appropriate testing is completed." (R. 416). The Opinion noted: "**Due to the extreme age of this claim the Commissioner is urged to give it priority on remand for a prompt disposition.**" (R. 416 – emphasis original).

Upon this third remand, on February 20, 2008, Plaintiff appeared and testified at his *fourth* hearing (R. 559-93). On November 4, 2008, the ALJ issued the unfavorable hearing decision which is presently before the Court (R. 384-99). Plaintiff filed written exceptions to the decision, but the Appeals Council declined review (R. 379-83), making the November 2008 decision the final decision of the Commissioner. Plaintiff filed the instant suit and the parties consented to the jurisdiction of the undersigned magistrate judge. Thus, having exhausted all possible administrative remedies, Plaintiff again presents this case for review -- twelve years after the filing of his application.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to a lower back injury and resulting pain, depression and memory and concentration difficulties (R. 32-35, 38, 40-42, 44-45, 89-99, 121, 125, 327-29, 331-35, 341, 343-49, 354). Plaintiff also alleges that he is dyslexic and functionally illiterate.

*Summary of Evidence before the ALJ*

Plaintiff was forty-six years old when his insurance expired on December 31, 1996. Plaintiff reported that he did not complete twelfth grade and did not graduate from high school, but had completed two years of vocational training in diesel mechanics. Plaintiff's past relevant work experience includes employment as a driver, laborer, and self-employed carpenter.

Plaintiff's medical history is set forth in detail in the ALJ's decision and has been twice summarized in opinions issued by the undersigned and included in the administrative record. As this is a Disability Insurance Benefits claim and Plaintiff's date last insured was December 31, 1996, the

medical evidence relevant to the claim has not changed, and the Court incorporates the following summary, from its earlier opinion:

> The medical record indicates that Plaintiff presented to Mark A. Beckner, M.D., on April 5, 1996 for evaluation of back pain, following an injury at work. Dr. Beckner did not order any x-rays or other diagnostic tests. Physical examination revealed pain upon bending, and mild tenderness, but normal reflexes, strength and sensation. Dr. Beckner prescribed exercises, an anti-inflammatory medication, heat and ice. Diagnosis was lumbar strain. Plaintiff was placed on light duty, with no repetitive lifting or bending, avoidance of climbing, and a 15 lb. lift limit.
>
> Plaintiff returned on April 19, 1996, complaining of numbness in his right thigh and continued pain. Assessment was lumbar strain with mild right anterior thigh numbness. Dr. Beckner noted that Plaintiff was "not improving to his or my satisfaction" and prescribed therapy for spine stabilization. On May 3, 1996, Plaintiff returned with continued complaints of pain and numbness. He reported that the therapy had not helped. Examination revealed good strength, with continued diminishment of the right reflexes compared to the left. Diagnosis was lumbar strain with persistent right thigh numbness with activity. Dr. Beckner ordered an MRI and work restrictions continued.
>
> Plaintiff underwent an MRI on May 8, 1996, which revealed a moderate degree of foraminal stenosis, bilaterally, at L5-S1 secondary to a mild diffuse disc bulge in combination with moderate degenerative facet joint changes and mild spondylitic ridging of the end-plates, and a mild to moderate degree of foraminal stenosis bilaterally at L4-5. Dr. Beckner saw Mr. Cali again on May 10, 1996 and confirmed the spinal damage revealed in the MRI.
>
> It appears that Plaintiff ceased treating with Dr. Beckner, in favor of treatment with a chiropractor. Plaintiff received chiropractic treatment from David A. Jaffe, D.C., from May 17, 1996 to January 22, 1997. On initial examination, Plaintiff presented with pain and tenderness on palpitation, and some parasthesia into the right anterior thigh. Straight leg raise was positive bilaterally and lumbar range of motion was limited, with pain. Dr. Jaffe's initial diagnosis included: Intervertebral disc disorder without myelopathy involving the L5-S1 disc, moderate lumbar sprain, and lumbar radiculitis Dr. Jaffe pronounced Plaintiff "disabled from work until further notice, due to the acute nature and radicular pain he is experiencing." Prognosis was fair to guarded. On July 16, 1996, Dr. Jaffe issued a progress report to the insurance carrier of Plaintiff's employer. The report showed continued objective findings of pain and restriction, and concluded that Plaintiff continued to be "temporarily totally disabled." Plan was to continue chiropractic manipulation.
>
> Plaintiff was examined by Dr. Jaffe on September 27, 1996. Examination revealed pain and tenderness as well as some slight parasthesia in the right anterior thigh.

-4-

Straight leg raise was positive bilateral, with pain, and range of motion was limited, with pain. Dr. Jaffe noted that, in his opinion, Plaintiff had suffered a 6% permanent partial impairment to the body as a whole, and that Plaintiff would have difficulty performing his usual occupational duties. Plaintiff returned in October and early November, reporting increasing pain and limitations upon work attempts. On January 8, 1997, Dr. Jaffe noted that Mr. Cali was still having constant right lumbar pain with right lower extremity parasthesia into his foot, with increased pain on bending, sitting and lifting activity.

Plaintiff presented for an independent medical examination to Joseph C. Flynn, Jr., M.D., on May 1, 1997. Physical examination was notable for a slightly antalgic gait from the right lower extremity, tenderness in the lower lumbar spine, limitation on range of motion, and diminished reflexes on the right. Motor strength was 5/5, with a hint of weakness on the right. Straight leg raise was negative, and Plaintiff could stand on toes and heels "without too much trouble." Dr. Flynn reviewed the MRI and observed a right-sided lateral disc herniation that could definitely be catching the L-5 nerve root. Impression was right L4-5 lateral disc herniation and right sided L5-S1 neuroforaminal stenosis. Dr. Flynn thought that Mr. Cali was incapable of working, pending further testing and evaluation.

On May 13, 1997, Plaintiff was examined by another chiropractor, Joseph E. Fuller, D.C., who diagnosed intervertebral disc syndrome, L4-5, with joint instability at L4-5. Physical examination showed limited range of motion, with pain. Plaintiff underwent additional radiographs of flexion/extension, which revealed instability at the level of L4 on 5 with an extrusion of 10mm when measuring the posterior aspect of L4 to the posterior aspect of L5. Dr. Fuller recommended further diagnostic tests, and agreed with Dr. Flynn's opinion that Plaintiff should not work, pending further detailed evaluation. Dr. Fuller opined that the new radiographs "clearly corroborate the complication of this condition" and that Plaintiff was not capable of performing his job, due to the instability of his spine.

The record also includes medical reports from Michael J. Broom, M.D., from August 25, 1997 to June 8, 1998. Plaintiff presented to Dr. Broom on August 25, 1997, and examination revealed tenderness, decreased sensation on the right and absence of patellar reflex on the right, as well as fatigue and mild decreased strength. Dr. Broom interpreted the x-rays taken by Dr. Fuller to show "significant spondylolisthesis." Based on a review of the radiographs, MRI and the physical examination, Dr. Broom diagnosed bilateral spondylolisthesis at L4-5, L5-S1 with foraminal stenosis both at L4-5 and L5-S1. It was Dr. Broom's opinion that these impairments would cause the low back pain and symptoms of radiculopathy with thigh and leg pain developing with walking that Plaintiff was experiencing. Dr. Broom felt Mr. Cali was a candidate for lumbar decompression. Dr. Broom saw Mr. Cali again on October 13, 1997 when he again offered the decompression and fusion procedure, but stated it would be preferable to avoid the surgery and continue with activity modification. Dr. Broom placed Plaintiff on restrictions of avoiding repetitive bending, squatting, climbing, or lifting over 15 pounds; also, breaks from prolonged standing and prolonged walking.

> On June 8, 1998, Dr. Broom completed a medical questionnaire stating that Plaintiff could sit for five hours and stand for three hours in an eight hour day, but "needs breaks," that Plaintiff was required to alternate positions frequently, that Plaintiff could not use his right foot for repetitive movements, and that he would need at least one ten minute rest period per hour. On January 6, 1998, Dr. Broom stated that Plaintiff reached MMI on October 31, 1997, and that he had a 9% permanent impairment and was to avoid repetitive bending, squatting, climbing, and lifting over 15 pounds. Dr. Broom also noted the need for breaks from prolonged sitting and standing.
>
> The record also contains reports from two nonexamining, nontreating physicians, one of whom thought Mr. Cali could do light work, and the other thought he could do medium work.

*See Cali v. Comm'r of Soc. Sec.*, Case No. 6:02-cv-982-Orl-28DAB (M.D. Fla. Nov. 3, 2004) (internal record citations omitted).

The ALJ determined that, through Plaintiff's date last insured, December 31,1996, he had the severe impairments of bilateral moderate foraminal stenosis at L5-S1, secondary to bony degenerative changes of the endplates, and lumbar radiculopathy on the right, and the record supports this uncontested finding. The ALJ noted that Plaintiff was "deficient in reading" and had "signs of dyslexia" (R. 391), and the record supports this finding, as well. The ALJ further found that through his date last insured, Plaintiff had the residual functional capacity to perform unskilled sedentary work "except that the claimant's reading limitations limited his ability to perform sedentary jobs that required reading." (R. 391-92). The ALJ made a finding that Plaintiff's impairments could reasonably be expected to produce his alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" (R. 392-93). The ALJ concluded that, through his date last insured, Plaintiff could not perform his past work, but "there were jobs that existed in significant numbers in the national economy that the claimant could have been expected to perform," and found that he could perform the "requirements of representative occupations such as the service system

monitor job, the hand packager, or the assembler fabricator job" (R. 398), and was, therefore, not disabled.

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## ISSUES AND ANALYSIS

Plaintiff raises several issues for review, most of which are interrelated: 1) whether the ALJ set forth the requisite "good cause" for rejecting the opinion of Plaintiff's treating physician; 2) whether the ALJ's findings with respect to a consultative examiner were supported by substantial evidence: 3) whether the credibility finding is supported by substantial evidence; and 4) whether the

-7-

finding that there is other work that Plaintiff could perform is adequately supported. While the Court does not agree with all of Plaintiff's contentions, reversible error is nonetheless apparent.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Applied here, the ALJ determined this matter at the fifth step of the sequential evaluation. Thus, the ALJ found that Plaintiff met his burden of proving that he could not return to his past relevant work and the burden shifted to the Commissioner to show that Plaintiff could nonetheless perform other work that exists in the national economy.

**Treating Physician**

A common thread among Plaintiff's objections is Plaintiff's contention that the ALJ erred in failing to credit the opinion of Dr. Broom, set forth above, that Plaintiff needed a 10-minute rest break every hour. At two hearings, the Vocational Expert testified that if a person needed a 10 minute rest period every hour, there would be no work he could perform (R. 374; 584-85). Thus, if Dr. Broom's

-8-

opinion were to be credited, the Commissioner's decision at step five of the sequential evaluation that there were other jobs Plaintiff could perform could not be sustained based on the uncontradicted vocational evidence of record. While the ALJ summarized Dr. Broom's findings and opinions in his decision, and further noted the Vocational Expert's testimony, he nonetheless stated that: "It should be noted that the evidence does not substantiate the claimant's need for an hourly 10 minute rest period on or before December 31, 1996." (R. 397). The Court finds this finding is not supported by substantial evidence and was not made in accordance with the appropriate standards of law.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record

as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, there is no dispute that Dr. Broom was a treating physician and, as such, his opinion would normally be entitled to deference. Here, however, the ALJ recites a summary of the evidence in detail and concludes, without explanation, that this evidence does not substantiate the need for a ten minute rest period during the applicable period. The Court finds that this statement does not satisfy the above standard.

Although the Commissioner in his brief appears to contend that the 10 minute rest period opinion is properly discredited because it was rendered after the date last insured and is inconsistent with the objective evidence (citing certain treatment notes), the Court is unpersuaded. In the first instance, such an explanation is missing entirely from the ALJ's opinion itself. As this Court previously has noted: "[g]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Hibbard v. Commissioner of Social Sec.*, 2007 WL 4365647, 3 (M.D. Fla. 2007), *citing Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir.2003); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001). Second, the ALJ's opinion affirmatively shows that Dr. Broom's opinion was not discredited due to the fact that he examined Plaintiff after the date last insured. Indeed, the ALJ cited to Dr. Broom's "June 8, 1998" physical capacities evaluation form as support for his conclusion that "the evidence establishes that the claimant retained the residual functional capacity to perform at least sedentary to light work activities through June 8, 1998." (R. 395).

Finally, on the merits, as this Court held in prior opinion, "All of the medical evidence in this case is consistent, and the ALJ does not identify any area where the objective medical evidence does not support Plaintiff's allegations of pain." Similarly, the ALJ simply fails to identify any area where the objective medical evidence, which includes not only the uncontested MRI and treatment notes but also Dr. Flynn and Dr. Fuller's earlier conclusions that Plaintiff should not work at all pending further examination, are inconsistent with a 10 minute rest period requirement. Because the ALJ failed to support his rejection of Dr. Broom's opinion, that opinion is accepted as true, as a matter of law. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) ("Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true"); *see also Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216-1217 (11th Cir. 1991)*,* remanding with directions to enter a finding of disability, noting, among other things:

> The Board did not properly refute the two doctors' opinions. It merely stated that "[a]ll other doctors who offered opinions concluded that appellant could engage in some level of light or sedentary work activity. These conclusions were supported by objective evidence which indicates a back impairment and chronic venous insufficiency of only minimal severity." This conclusory statement is not sufficient. Numerous doctors other than Bacevich and Williams examined Elam using a variety of diagnostic techniques. Most of the other doctors agreed that there was objective medical evidence of an underlying condition that could be reasonably expected to cause Elam some pain, although none of them agreed that Elam was totally disabled. The Board did not state on which of these other doctors' opinions it was relying or what objective evidence it believed supported their opinions. In short, it gave no "explicit and adequate" reason, *Cannon*, 858 F.2d at 1545, why the other doctors' opinions were sufficiently credible to overcome the deference it owed to the treating physician's opinion. Therefore, the Board must now accept as true the conclusion of the treating physician, corroborated by the conclusion of Dr. Williams, that Elam suffers from disabling pain. *MacGregor* at 1053.[2]

The ALJ's finding rejecting Dr. Broom's opinion that Plaintiff needs a 10 minute rest period every hour is not supported by substantial evidence, and was not made in accordance with appropriate legal standards. Treating the opinion as true, the Court concludes, based on the uncontradicted

---

[2] The Eleventh Circuit has applied the Social Security Act regulations and case law to Railroad Retirement Act cases. *See Elam,* 921 F. 2d at 1213.

vocational evidence that a person so restricted could perform no work, that the remaining conclusion that Plaintiff could perform other work in the national economy is also not supported by substantial evidence. As there is no work Plaintiff can perform, remand for additional findings is unnecessary as Plaintiff is entitled to his benefits, as a matter of law.[3] *See Borden v. Astrue,* 494 F. Supp. 2d 1278, 1284 (N.D. Ala. 2007) ("This is a case where 'the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.' *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.").

## *CONCLUSION*

The decision of the Commissioner is hereby **REVERSED,** and the case is **REMANDED** to the Commissioner with instructions that the Plaintiff be awarded the benefits claimed. It is further **ORDERED** pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that Plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

The Clerk is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Orlando, Florida on June 21, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[3] In view of this conclusion, the Court need not reach Plaintiff's other objections.

Copies furnished to:

Counsel of Record